UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) C.A. No. 1:23-cr-114-JJM-LDA |
| | ) |
| AUDI PINEDA, | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Audi Pineda is charged with being a felon in possession of a firearm and possession of cocaine with intent to distribute. ECF No. 1. He asks the Court to suppress the fruits of four state search warrants and requests a *Franks* hearing, asserting that the affidavit supporting the search warrants were insufficient to establish probable cause. ECF No. 20. For the reasons stated below, the Court DENIES Mr. Pineda's Motions to Suppress and for a *Franks* hearing.

**I.   BACKGROUND**

On October 23, 2023, Rhode Island District Court Judge Debra Saunders signed a search warrant for Mr. Pineda's first floor apartment at 17 Raphael Avenue in Providence, Rhode Island. ECF No. 20 at 11. That same day, Rhode Island District Court Judge Joseph Houlihan signed three search warrants for the following: (1) a 2019 white Honda Civic; (2) Ultra Barber Salon at 22 Monterey Drive in West Warwick, Rhode Island—Mr. Pineda's place of employment; and (3) Mr. Pineda's

person. *Id.* at 19-38. The next day, local authorities executed all four search warrants, seizing: (1) a firearm, over half a kilogram of cocaine, and drug-trafficking paraphernalia from his residence; (2) Mr. Pineda's cellphone from his Honda Civic; and (3) a small quantity of cocaine and drug-trafficking paraphernalia from his workplace. ECF No. 23 at 5-6. Because of the search, Mr. Pineda was arrested on state charges. *Id.* at 6. Over a month later, a federal grand jury indicted Mr. Pineda on federal gun and drug charges. ECF No. 1.

### A. State Search Warrants

The four state search warrants were based on Pawtucket Police Detective Jeffrey Furtado's affidavit. The three-and-a-half-page document detailed the facts Detective Furtado relied on to establish probable cause, which he acquired from a few sources. Detective Furtado's affidavit reveals that he obtained much of his information from a confidential informant ("CI") who claimed familiarity with Mr. Pineda's drug-trafficking activities in the cities of Pawtucket and Providence. *See* ECF No. 20 at 13-15. The CI disclosed his personal knowledge of Mr. Pineda, describing his: (1) physical appearance, (2) residence in the Charles Street area of Providence, (3) ownership of a white Honda Civic, and (4) place of employment. *Id.* at 13. Law enforcement corroborated these disclosures through conducting surveillance, searching databases, and social media investigation. *Id.* The CI also reported that he observed Mr. Pineda with large quantities of cocaine and marijuana and identified the phone number Mr. Pineda used to facilitate his drug-trafficking. *Id.* Detective Furtado then described his familiarity with Mr. Pineda stemming from

2

Pawtucket Police and the Drug Enforcement Administration's previous investigation of him, which revealed Mr. Pineda's use of his residence and workplace to facilitate drug trafficking—stashing money, cell phones, and large quantities of narcotics at each location.[1] *Id.*

In furtherance of the investigation, Detective Furtado explained that the CI made two law enforcement coordinated marijuana purchases from Mr. Pineda.[2] *Id.* In the first drug buy, the CI contacted Mr. Pineda at his phone number—in Detective Furtado's presence—to arrange a marijuana purchase at a predetermined location. *Id.* at 14. Law enforcement then surveilled Mr. Pineda as he left his apartment, traveled to the predetermined location in his white Honda, and sold the CI marijuana.[3] ECF No. 20 at 14. The second drug buy was like the first, except this time law enforcement: (1) surveilled Mr. Pineda leaving his workplace to travel to the predetermined location, and (2) followed Mr. Pineda after he sold marijuana to the CI and witnessed him engage in counter-surveillance conduct that narcotics dealers commonly use to throw off individuals who may be following them. *Id.* at 15.

Based on the above information—and his training and experience—Detective Furtado believed that there was probable cause to search Mr. Pineda's person,

---

[1] This investigation led to Mr. Pineda's previous ten-year sentence on federal drug charges. 11-cr-167-JJM-PAS.

[2] Detective Furtado noted that in these controlled purchases, law enforcement searched the CI to ensure he was free from contraband and suppled the CI with official funds from the City of Pawtucket to purchase the narcotics from Mr. Pineda. ECF No. 20 at 14.

[3] Detective Furtado explained that a field test performed on the drugs purchased from Mr. Pineda "yielded a positive for the presence of Marijuana." ECF No. 20 at 15.

3

residence, workplace, and vehicle for marijuana, cocaine, and related paraphernalia. *Id.* at 16.

## II. DISCUSSTION

Mr. Pineda moves to suppress evidence obtained from the execution of the four state court search warrants, contending that the Detective Furtado's affidavit contained conclusory and vague assertions that were insufficient to establish probable cause. ECF No. 20 at 2. Particularly, he contends that the affidavit: (1) did not include information sufficient to allow the state court judges to assess CI's credibility; (2) failed to corroborate some of the CI's information; (3) and did not provide sufficient details about the two drug buys. *See id.* at 6-7. In turn, Mr. Pineda asserts that he is entitled to a *Franks* hearing because those purported omissions in Detective Furtado's affidavit were material to the probable cause inquiry. *Id.* at 7.

The government maintains that the affidavit established probable cause to search Mr. Pineda's person, residence, vehicle, and workplace and the deficiencies alleged do not undercut probable cause. *See* ECF No. 23 at 7-10. Alternatively, the government argues that even if the warrant affidavit did not support a probable cause finding, under the good-faith rule, the Court should not suppress the evidence seized because law enforcement acted in good-faith reliance on the four warrants. *Id.* at 10. As for the *Franks* hearing request, the government asserts that Mr. Pineda has not demonstrated he is entitled to such a hearing because he cannot prove that (1) Detective Furtado intentionally or recklessly omitted information from the affidavit, or (2) that such alleged omissions were material to finding probable cause. *Id.* at 12.

4

The Court will address the Motion to Suppress and *Franks* hearing arguments in turn.

### A.   Sufficiency of the Affidavit Supporting the Search Warrants

When evaluating the sufficiency of an affidavit supporting a search warrant, courts give ample deference to the issuing magistrate judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). This evaluation requires courts to interpret affidavits in a commonsense—rather than a hypertechnical—fashion. *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109, (1965)). The standard for determining an affidavit's sufficiency is whether the "totality of the circumstances" in the affidavit shows probable cause "to search either the premises or the person." *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997) (citing *Gates*, 462 U.S. at 238). The probable cause bar is not a high one, demanding only "proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found within the objects to be searched." *United States v. Coombs*, 857 F.3d 439, 446 (1st Cir. 2017) (citing *United States v. Clark*, 685 F.3d 72, 75-76 (1st Cir. 2012)).

Mr. Pineda first challenges to the sufficiency of Detective Furtado's affidavit center on the CI's credibility. He argues that Detective Furtado's affidavit did not: (1) mention the CI's criminal history, (2) disclose that the CI was cooperating with law enforcement to receive a favorable outcome for pending drug charges against him, or (3) otherwise establish the CI's reliability. ECF No. 20 at 3. He also asserts that the affidavit did not provide factual context or evidence to support the "conclusory" assertions that the CI had information about illegal drug distribution in Pawtucket,

5

knew Mr. Pineda was distributing cocaine and marijuana, and had seen him with large quantities of such drugs. *Id.* at 4. Therefore, Mr. Pineda contends that these purported improprieties in the affidavit deprived the state court judges of the information needed to assess the CI's credibility and make an informed probable cause finding. *Id.* at 4-5.

The government counters that there was sufficient information in the affidavit to demonstrate that the CI was reliable and for the state court judges to make a probable cause finding. First, the government points out that the affidavit detailed the CI's first-hand knowledge of Pineda's current drug dealing, which law enforcement ultimately corroborated through the coordinated drug buys. ECF No. 23 at 8-9. Further, the government highlights that the CI provided first-hand knowledge of Mr. Pineda's person, residence, vehicle, and workplace, which law enforcement corroborated through surveillance, database checks, and social media investigation. *Id.* at 8. The government suggests that law enforcement's ability to corroborate the relevant details the CI provided, was sufficient to establish reliability his information. *Id.* at 9. The government also contends that the fact that the CI made a "deal" with law enforcement, does not detract from his credibility because the CI faced a risk of being held accountable if he provided misinformation to law enforcement—a risk the government suggests supports finding the CI's information reliable. *Id.* at 10.

When a probable cause finding is mainly based on information a CI provided, the affidavit must present "some information from which a magistrate can credit the

6

informant's credibility." *United States v. Gifford*, 727 F.3d 92, 99 (1st Cir. 2013) (citing *United States v. Barnard*, 299 F.3d 90, 93 (1st Cir. 2002)). "[A] probable cause finding may be based on an informant's tip so long as the probability of a lying or inaccurate informer has been sufficiently reduced." *Id.* (quoting *United States v. Greenburg*, 410 F.3d 63, 69 (1st Cir. 2005). When an affidavit primarily relies on an CI's report to law enforcement, the Court uses the following a nonexhaustive list of factors to assess the affidavit's probable cause showing:

> (1) whether the affidavit establishes the probable '"veracity" and "basis of knowledge" of persons supplying hearsay information,'; (2) whether an informant's statements reflect firsthand knowledge,; (3) whether 'some or all [of] the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance),'; and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information.

*United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011) (citations omitted). Importantly, none of these factors are indispensable; stronger support for one factor may make up for lesser support as to the other factors. *Id.*

As to the first factor, although the affidavit did not disclose the CI's criminal history or pending charges, it did not lack information relevant to assess the CI's veracity. First, the affidavit illustrates that Detective Furtado knew the CI's identity and thus could hold him accountable if his assertions about Mr. Pineda proved false. Such an incentive to tell the truth supports the CI's reliability. *See Greenburg*, 410 F.3d 63 at 67 (noting that law enforcement's knowledge of informant's identity and ability to hold the informant responsible if he provided false information served as informant's incentive to tell the truth). Additionally, the fact that the CI had multiple

7

face-to-face meetings with Detective Furtado to relay information about Mr. Pineda and coordinate the drug buys also supports the CI's reliability. *See id.* ("[F]ace-to-face contact between the agent and informant supports the informant's reliability.").

That said, regarding the second factor, the CI statements do not provide a *detailed*, first-hand account of Mr. Pineda's criminal activity. *See Greenburg*, 410 F.3d at 67 ("A specific, first-hand account of possible criminal activity is a hallmark of a credible tip."). The CI did note that he observed Mr. Pineda with large quantities of marijuana and cocaine but gave no basis for how he learned of the vehicle and phone number Mr. Pineda used to facilitate drug trafficking—thus providing "no means to decide whether that information was obtained first-hand or through rumor." *Gifford*, 727 F.3d at 100.

But then, regarding the third factor, law enforcement's independent corroboration of facts learned from the CI make up for the CI's vague account of Mr. Pineda's drug trafficking. Specifically, law enforcement corroborated: (1) the CI's description of Mr. Pineda's physical appearance, residence, and workplace through police surveillance, database checks, and social media investigation, and (2) the CI's statement that Mr. Pineda sold drugs through the two successful drug buys—which law enforcement carefully monitored and controlled to ensure the CI was not falsely fabricating Mr. Pineda.[4] Therefore, law enforcement's ability to corroborate much of the CI's provided information enhanced the reliability of the CI's basis of knowledge

---

[4] "[A] properly conducted controlled buy is formidable evidence to support a search." *United States v. Genao*, 281 F.3d 305, 308 (1st Cir. 2002).

8

as to Mr. Pineda's drug trafficking. *See Tiem Trinh*, 665 F.3d at 11 (noting that surveillance corroborated much of the informant's information, enhancing the reliability of their basis of knowledge as to the defendant's criminal operation).

Lastly, the fourth factor, relating to the experience of the law enforcement office seeking the warrant, further establishes the CI's reliability. In the affidavit, Detective Furtado noted his twelve years of experience as a member of the Pawtucket Police Department, his current assignment to the Narcotics Unit, and his familiarity with his department's previous investigation of Mr. Pineda, which revealed his use of his workplace and residence to facilitate drug trafficking. An issuing judge is permitted to credit the expertise and experience of the law enforcement affiant when assessing the legitimacy of the CI's "description of the target's modus operandi." *Tiem Trinh*, 665 F.3d at 12–13 (quoting *United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993)). Moreover, "an affiant's knowledge of the target's prior criminal activity or record clearly is material to the probable cause determination." *Taylor*, 985 F.2d 3, 6 (1st Cir. 1993). Thus, Detective Furtado's extensive experience as a law enforcement officer combined with his knowledge of Mr. Pineda's previous criminal activity "plainly buttressed the informant-based indicia of probable cause." *Id.*

Taken together, the facts lain in the affidavit provided the state court judges with: (1) information needed to assess the CI's credibility, and (2) sufficient proof to support a fair probability that evidence of Mr. Pineda's illegal drug-trafficking scheme would be found at his residence, workplace, vehicle and on his person. *Coombs*, 857 F.3d 439, 446 (1st Cir. 2017).

Still, Mr. Pineda's contends that the affidavit failed to include sufficient detail of the two drug buys as to support probable cause. He notes that the affidavit neither provides a date, time, or location of either transaction nor the quantity or price of the marijuana sold. ECF No. 20 at 5. He also alleges that Detective Furtado's handwritten notes describing the two controlled drug buys attributed a phone number to Mr. Pineda that differed from the one the affidavit provided. ECF No. 20 at 7-8. And he asserts that there are no specific details of the substance of the calls between the CI and Mr. Pineda, or any time and date provided for each call. *Id.* at 6. He highlights that Detective Furtado's handwritten notes merely state that the two calls were "good" calls. *Id.*

The government counters that Mr. Pineda's contentions regarding the affidavit's description of the drug buys fails to recognize practical reasons not to include additional details, which is to protect the identity and safety of the informant. ECF No. 23 at 8-9. The government also notes that the two successful drug buys alone were sufficient evidence to provide probable cause. Lastly, the government asserts that the CI's corroborated intel, paired with Detective Furtado's description of his familiarity with Mr. Pineda's past use of his workplace and residence to facilitate drug trafficking supported the state court judges findings that "the affidavit established a fair probability that evidence of drug distribution would be located on Pineda's person, in his car, in his apartment, and at his workplace." ECF No. 23 at 8.

Mr. Pineda is correct that the affidavit lacks specific time frames regarding when the controlled drug buys occurred, or the quantity and price of the marijuana

sold at each transaction[5] *See* ECF No. 14-15. But as the government points out, it is common police practice to omit such details as to "protect the confidentiality of the informant." *United States v. Hicks*, 575 F.3d 130, 138 (1st Cir. 2009) (citing *United States v. Carty*, 993 F.2d 1005, 1007 (1st Cir. 1992)). Moreover, the issuing judges did not need the affidavit to set forth the specific details of each drug buy because as the Court explained above "the 'totality of the circumstances' stated in the warrant affidavit was more than sufficient to establish probable cause" to believe that evidence of drug trafficking would be found in each place listed in the warrants. *See id.* at 139. Therefore, Mr. Pineda's fails to refute the propriety of the state court judges' probable cause findings and thus the Court DENIES his Motion to Suppress.

### B. Franks Hearing

Next, Mr. Pineda asserts entitlement to a *Franks hearing*, alleging that Detective Furtado's affidavit purportedly omitted information that was material to the probable cause inquiry. ECF No. 20 at 7. Implied in the probable cause standard is a demand "that probable cause be demonstrated by truthful statements in an affidavit." *United States v. Rigaud*, 724 F. Supp. 2d 223, 227 (D. Mass. 2010), *aff'd*, 684 F.3d 169 (1st Cir. 2012) (citing *Franks v. Delaware*, 438 U.S. 154, 165-66 (1978)). Therefore, when probable cause arises from "an affiant's deliberately or recklessly false statements, the resulting warrant is invalid and the Fourth Amendment rights of individuals subject to its execution are violated." *Id.* (citing *Franks*, 438 U.S. 154

---

[5] The affidavit only uses phrases such as "within the past few weeks" and "within the past week" to describe the time frames for the two drug buys. *See* ECF No. 14-15

at 171). Generally, courts presume that warrant affidavits are valid. *Franks*, 438 U.S. 154, 171. Nevertheless, defendants seeking to suppress evidence may be entitled to a so-called *Franks* hearing to challenge an affidavit's validity. *Id.*

To qualify for a *Franks* hearing, a defendant must satisfy a two-pronged test requiring "a substantial preliminary showing" that: (1) the warrant affidavit contained false statements made "knowingly and intentionally, or with reckless disregard for the truth," and (2) the statements must be "necessary to the finding of probable cause." *Id.* at 155-56. Material omissions of information may also trigger a *Franks* hearing. *United States v. Castillo*, 287 F.3d 21, 25 (1st Cir. 2002) (citing *United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir.1990)). If the defendant establishes the need for a *Franks* hearing, he then must prove: (1) the two-pronged test by a preponderance of the evidence, and (2) that "the affidavit's remaining content is insufficient to establish probable cause" when setting its false materials aside. *Franks*, 438 U.S. at 156. If successful, then the search warrant is invalidated, and the resulting evidence suppressed. *Id.*

### I.   Omissions Regarding the CI's Credibility

Mr. Furtado asserts that Detective Furtado omitted information from the affidavit about the CI's: (1) criminal history—which he alleges included fraud-related offenses—and (2) "deal" to work as a CI in exchange for more favorable treatment in his pending drug case. *Id.* at 7-8. The government concedes that the affidavit lacks disclosure of the CI's criminal history but argues none of his previous convictions involved crimes that undermines the CI's credibility. ECF No. 23 at 15-16. The

government also acknowledges the CI's fraud offenses, noting he "was arrested in 2018 for forgery/counterfeiting of registration plates, making/using false inspection certificates, and driving on a suspended license"—all misdemeanor offenses. *Id.* at 16. However, the government emphasizes that the CI was not convicted of these offenses and such offenses would not have changed the probable cause analysis considering the other facts supporting the CI's reliability. *Id.* at 16. As to the CI's "deal" with law enforcement, the government argues that disclosing that information in the affidavit would have bolstered the CI's credibility, not diminish it. *Id.* at 16-17.

While Detective Furtado's omission of the CI's criminal history and "deal" with law enforcement gives pause, even if such omissions were intentional or reckless, Mr. Pineda fails to show the inclusion of such information in the affidavit would prevent a probable cause finding. A review of the CI's past criminal convictions reveals that none of the underlying offenses involved perjury or false statements as to have an adverse effect on his credibility.[6] Further, the CI's mere arrest, rather than conviction, for misdemeanor forgery also does not help impugn his credibility.[7] *See*

---

[6] As the government now presents, the CI's criminal history included "eight felony or misdemeanor drug convictions, one weapons conviction, misdemeanor convictions for resisting arrest and driving on a suspended license, and a felony conviction for possession of stolen motor vehicle parts." ECF No. 23 at 15, 22-31. While the CI has a long list of convictions, none of the underlying offenses impugn on the CI's veracity—even the one for possessing stolen car parts. *See United States v. Tanguay*, 811 F.3d 78, 82 n.1 (1st Cir. 2016) (illustrating that possessing stolen property does not necessarily impugn one's veracity).

[7] Even if the CI's convictions and arrests weighed against the CI's credibility, the "countervailing indicia of truthfulness" outweighs such a credibility blemish. *Barbosa*, 896 F.3d at 73 (quoting *United States v. Tanguay (Tanguay* I), 787 F.3d 44,

13

*United States v. Barbosa,* 896 F.3d 60, 73 (1st Cir. 2018) (noting that dismissed charges for forgery, larceny and uttering a false check did not undermine informant's credibility); *see also United States v. Tanguay (Tanguay II),* 811 F.3d 78, 82 (1st Cir. 2016) (affirming that failure to disclose informant's arrests that "never ripened into convictions" did not materially affect probable cause finding). And as the government points out, "the fact that the CI was cooperating with police to obtain favorable treatment on charges pending against him would have bolstered, not diminished, his credibility." *United States v. Mitchner,* No. CR 11-124 S, 2013 WL 5942377, at *5 (D.R.I. Nov. 5, 2013) (citing *United States v. Legault,* 323 F. Supp. 2d 217, 227 (D. Mass. 2004)).

Put together, disclosing the CI's criminal history and "deal" with law enforcement in the affidavit would not have undermined the CI's reliability as to obstruct a probable cause determination. Nonetheless, the CI's credibility was not material to the state court judges' probable cause findings because there was sufficient evidence outside the CI's testimony that supported such a finding: the two controlled drug buys. These omissions therefore do not give rise to Mr. Pineda's entitlement to a *Franks* hearing. *Franks,* 438 U.S. 154, 155-56.

---

50 (1st Cir. 2015)). As the Court explained, several facts in the affidavit bolstered the CI's trustworthiness, including: (1) meeting face-to-face with Detective Furtado, (2) facing the risk of accountability if he provided false information, and (3) the police's ability to corroborate most of the CI's intel about Mr. Pineda.

14

## II.   Omissions Regarding the Two Controlled Drug Buys

Next, Mr. Pineda argues that the affidavit omitted details regarding the two controlled drug buys. He again highlights that the affidavit neither provided a date, time, or location for either buy nor the quantity and price of the marijuana sold. ECF No. 5. The government counters, stating that the specific details of the controlled drug buys that Mr. Pineda highlights, were—in conformity with common police practice—omitted to protect the CI's identity. ECF No. 23 at 17. The government asserts that if the affidavit included such detailed it "could have singled-out the [CI]" and therefore the omissions should not be inferred as an attempt to mislead the issuing judges. *Id.* at 17-18. The government also asserts that if this omitted information were included in the affidavit would have bolster probable cause, not diminish it. *Id.* at 18.

Here, Mr. Pineda cannot show that Detective intentionally or recklessly omitted details about the controlled drug buys from the affidavit. Not specifying the "date of the [controlled] buy or the quantity involved is not necessarily probative of falsity" because it is common police practice not to outline such details as to protect the informant's confidentiality. *United States v. Hicks*, 575 F.3d 130, 138 (1st Cir. 2009) (quoting *United States v. Davis*, 1996 WL 521202, at *6 (1st Cir. Sept. 16, 1996)). Terms like "on or about" or "within the past few days" constitute vague descriptors of a controlled drug purchase's time frame that the First Circuit remarked as part of the common practice to protect a CI's identity. *See id.; see also United States v. Carty,* 993 F.2d 1005, 1008 (1st Cir. 1993) (remarking that the affiant's use

of the vague terms "within the past few days" was because of the common police practice of avoiding precise details of the controlled buys' dates as to protect the CI's identity).

Detective Furtado's affidavit reflects a concerted effort to vaguely describe certain details of the two controlled buys as to avoid identifying the CI involved in those transactions. He uses terms such as "within the past week," "over the past several weeks," "predetermined location," and "quantity of narcotics" to describe the circumstances of the transactions. It is not hard to imagine that disclosing the specific date, location of sale, and amount and value of marijuana sold in these transactions would permit Mr. Pineda to identify the CI involved—thus thwarting law enforcement's efforts to shield that identity. Accordingly, Detective Furtado's omission of these specific circumstances of the drug buys does not read as an intentional or reckless omissions of information as to mislead but a permissible exercise of protecting the CI's identity. *Hicks*, 575 F.3d at 138. Therefore, Mr. Pineda fails to make a substantial showing that these omissions were intentional or reckless and is not entitled to a *Franks* hearing on this issue.[8]

### III. Misrepresentation of Mr. Pineda's Phone Number

Next, Mr. Pineda again highlights that Detective Furtado's handwritten notes describing the two controlled drug buys attributed a phone number to Mr. Pineda that differed from the one the affidavit provided. ECF No. 20 at 7-8. Based on these

---

[8] Even if Detective Furtado's omissions were intentional or reckless, Mr. Pineda fails to demonstrate how including the specific details of the two controlled drug buys would inhibit a probable cause finding rather than bolster it.

discrepancies, Mr. Pineda appears to suggest that Detective Furtado intentionally or recklessly misrepresented the phone number the CI reported as belonging to Mr. Pineda. The government counters that the discrepancy between the phone number listed in the notes and the affidavit does not represent an intentional or reckless disregard for the truth because: (1) if anything the notes misrepresented Mr. Pineda's number, not the affidavit, (2) the discrepancy is not evidence of a lie, and (3) the phone number listed in the handwritten notes was not meant to represent Mr. Pineda's number but the number the CI used to arrange the drug buys. ECF No. 18-19.

The first page of Detective Furtado's handwritten notes appears to represent all the initial information the CI provided to law enforcement regarding Mr. Pineda. *See* ECF No. 20 at 72. The name "Audi Pineda" is listed at the top of the page, and directly below it is a phone number that is indeed different from the one attributed to Mr. Pineda in the affidavit. *See id.* Then, the lines below the phone number appears to detail Mr. Pineda's vehicle, physical appearance, workplace, and residence, mirroring the CI's description of Mr. Pineda that Detective Furtado detailed in his affidavit. *Compare* ECF No. 20 at 72 *with* ECF No. 20 at 13. Given that the first page of the handwritten notes are practically notes on what the CI's knew about Mr. Pineda, it does not appear likely that the phone number listed below Mr. Pineda's name was the CI's phone number as the government suggests. Rather, it appears that the number listed in the notes is the one the CI reported as belonging to Mr. Pineda. There is thus a discrepancy between the number attributed to Mr. Pineda in the notes and the affidavit.

17

That said, Mr. Pineda fails to demonstrate that Detective Furtado's misstatement of the phone number the CI reported was either intentional or reckless. The ten-digit phone numbers listed in affidavit and the notes differ only in the last four digits. *See* ECF No. 20 at 72; ECF No. 20 at 13. Thus, the minor inconsistencies between the numbers Detective Furtado recorded, *at most*, demonstrates negligence, and negligent conduct is not enough to warrant a *Franks* hearing.[9] *Franks*, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient.")

### IV. Omission of Substantive Information Regarding the CI and Mr. Pineda's Conversations

In another familiar argument, Mr. Pineda also asserts that Detective Furtado omitted substantive information about the two calls between Mr. Pineda and the CI during the two drug buys. ECF No. 20 at 8. He notes there is neither any audio recordings of each call, nor any date and time for each call. *Id.* at 6. Additionally, Mr. Pineda points out that while Detective Furtado's affidavit does not specifically disclose whether the CI communicated with him via text message or phone call, the government's descriptions of the two drug buys imply that the two communicated via text message. ECF No. 24 at 4. Mr. Pineda highlights that Detective Furtado's handwritten notes of each transaction contradict such a mode of communication because he noted that the CI had a "good call"—which purportedly suggests that the

---

[9] Further, considering that the phone number attributed to Mr. Pineda in the affidavit was ultimately the number tied to the phone law enforcement seized from him after executing the search warrants, *see* ECF N. 23 at 9, it appears more likely that Detective Furtado merely recited the wrong number in his handwritten notes and then recited the correct number in the affidavit.

communications occurred via phone calls rather than text messages. *Id.* Thus, Mr. Pineda asserts that such discrepancies in the description of the CI's and Mr. Pineda's mode of communications is another impropriety that undercuts the accuracy of Detective Furtado's affidavit. *Id.*

In Detective Furtado's handwritten notes describing the two drug buys, he writes "CI" near the term "good call." *See* ECF No. 20 at 73-74. Based on these notes, it is fair to assume, as Mr. Pineda has, that the CI *called* Mr. Pineda to coordinate each drug buy. However, Detective Furtado notes are informal, riddled with shorthanded notations and vague descriptors. *See id.* His notes do not represent an effort or intent to detail each drug buy thoroughly as one would do in an affidavit or official report. Thus, it is unclear whether Detective Furtado used "good call" as a shorthand—or term of art—to denote the CI's successful coordination of the drug buys with Mr. Pineda via text message or if he was noting that the two communicated via phone call. Regardless, adjusting Detective Furtado's affidavit to merely reflect that the CI called Mr. Pineda rather than texted him, would not disturb a probable cause finding as to entitle him to a *Franks* hearing.

### V.     Other Purported Omissions

Lastly, Mr. Pineda asserts that the affidavit omitted information necessary to corroborate the CI's assertion that he was: (1) dealing in Pawtucket; (2) dealing cocaine; and (3) living in the Charles Street area of Providence. *Id.* at 8. However, Mr. Pineda does not explain how inclusion of such information would thwart a

probable cause finding rather than bolster it. Thus, these purported omissions do not entitle him to a *Franks* hearing.

### III. CONCLUSION

Mr. Pineda has not shown that Detective Furtado's affidavit lacked the probable cause necessary for the state court judges to issue the four search warrants. Nor has Mr. Pineda made a substantial showing that the Detective Furtado included false statements, or omitted information from the affidavit that were material to the probable cause inquiry, as to entitle Mr. Pineda to a *Franks* hearing. Accordingly, the Court DENIES Mr. Pineda's Motions to Suppress and for a *Franks* hearing. ECF No. 20.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

December 19, 2024